**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Walter Jackson,** | **CASE NO.  1:15 CR 258** |
| Plaintiff, | **JUDGE PATRICIA A. GAUGHAN** |
| Vs. | |
| **United States of America,** | **Memorandum of Opinion and Order** |
| Defendant. | |

**PROCEDURAL BACKGROUND**

On February 4, 2013, Petitioner Walter Jackson recruited Felicia Russell to purchase a Cobra, Model CA380 pistol and ammunition for him. (Doc 15 at 55, 57). Petitioner was ineligible to possess a firearm because of his prior criminal history. On January 15, 2014, local law enforcement responded to an anonymous tip that a suspected burglar was sitting in a parked vehicle with his lights off on West 10th Street. The officers approached the vehicle and asked the suspected burglar, later identified as Petitioner, to exit the vehicle. Upon patting Petitioner down, one of the officers felt a handgun in Petitioner's pocket. (*Id.*) The officers retrieved the loaded gun, which was the pistol that Russell had purchased for Petitioner earlier. (*Id.*) Upon an

1

inventory search of the vehicle, the officers found "several items indicative of car theft and burglaries." (*Id.* at 58).

State prosecutors prosecuted Petitioner for having a weapon under disability, in violation of Ohio Rev. Code § 2923.13. (*Id.* at 66). Federal agents later traced the purchase of the firearm and interviewed Russell. Russell admitted her conduct and was prosecuted for being a straw purchaser of the firearm. Thereafter, on July 1, 2015, a federal Grand Jury issued an indictment charging Petitioner with aiding and abetting the acquisition of a firearm through false statements, in violation of 18 U.S.C. §§ 2 and 922(a)(6).

Petitioner pled guilty on January 14, 2016, without a plea agreement. His advisory sentencing guidelines range was 51 to 63 months of imprisonment. On April 7, 2016, this Court sentenced him to 51-months imprisonment, followed by three years of supervised release. At the sentencing hearing, the Court advised Petitioner of his right to appeal: "Let me inform you, sir, you have the right to appeal your conviction and sentence. If you cannot afford to appeal, the costs will be borne by the Government."

Petitioner did not file an appeal, either pro se or through counsel. Petitioner then filed his § 2255 motion on October 5, 2016. He raised three issues: (1) his federal prosecution violated the Tenth Amendment's separation of powers; (2) his federal prosecution violated the Fifth Amendment's Double Jeopardy Clause; and (3) trial counsel was ineffective for failing to file a direct appeal from his federal conviction. This Court denied the first two claims but held that an evidentiary hearing was necessary on claim three. The Court appointed counsel to represent Jackson at the hearing. The parties then filed a joint motion in limine to resolve claim three based on trial counsel's affidavit and Jackson's verified § 2255 motion, which this Court

granted. According to Petitioner, he expressly told his counsel, Craig Weintraub, to file an appeal and Weintraub "assured ...[Petitioner that] the filing of the notice of appeal would be forthcoming." (Doc. 22-1 at 14).[1] Petitioner further stated that he and his relatives attempted to contact Weintraub on numerous occasions after his conviction but he ignored these attempts. In his affidavit, Weintraub averred that Petitioner never asked him to file a notice of appeal. He also stated that he reviewed his file and did not locate any written requests from Petitioner to file a notice of appeal on his behalf. This Court credited Weintraub's affidavit over Petitioner's and determined that there were no nonfrivolous grounds for appeal and that Petitioner had demonstrated he understood that he did not have a viable double jeopardy claim. As a result, the Court denied the claim.

Petitioner appealed the denial of all three claims; the Sixth Circuit granted a certificate of appealability as to only claim three. In addressing claim three, the Sixth Circuit held that this court "did not abuse its discretion in deciding not to hold an evidentiary hearing. Nor did [it] clearly err in crediting trial counsel's affidavit over that of [Petitioner]." (Doc. 41, at 3). Nevertheless, it vacated the judgment on claim three and remanded the case for further factual development in light of *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

**EVIDENTIARY HEARING**

This Court held an evidentiary hearing on October 12, 2012, at which both Weintraub and Petitioner testified. Weintraub testified that he has been licensed since 1987 and has been defense counsel in more than 1,000 cases, 100 of which were in federal court. He is a member of

---

[1] Petitioner filed his petition under penalty of perjury in accordance with 28 U.S.C. § 1746. (Doc. 22-1 at 16).

3

the Court's Criminal Justice Act panel and was assigned to represent Petitioner through the CJA.

At the outset of his representation, Weintraub assessed whether there were sufficient factual disputes in order for the case to proceed to a jury trial and also whether there were legal issues that could be raised in a motion to suppress. Weintraub testified that he discussed the issue of double jeopardy with Petitioner during his representation. He explained to Petitioner that the federal charge did not constitute double jeopardy because it required different elements than the state charge.[2] Ultimately, after discussing the case with Petitioner, Petitioner decided to plead guilty.

Weintraub filed a sentencing memorandum on Petitioner's behalf. In the memorandum, he pointed out that Petitioner had already served time in state court as a result of the weapon at issue in this case and also identified a number of Petitioner's personal characteristics that he asked the Court to take into consideration in determining the appropriate sentence.

After this Court sentenced Petitioner at the lowest level of his sentencing range,

---

[2] At Petitioner's sentencing hearing, Weintraub informed the Court that he had discussed this issue with Petitioner and that Petitioner understood that the state and federal offenses were two different crimes:

> We certainly acknowledge and Mr. Jackson acknowledges that it is separate elements, it's a separate criminal offense, and that's why he is here. And I recall the first time I met him at CCA, he asked why am I being prosecuted again, which is commonplace for a lot of people that don't understand the nuances of the law. They think the double jeopardy applies, and it doesn't.
>
> So he was advised of that, and that's why he accepted responsibility as well, because once it was explained to him that he had Ms. Russell do a straw purchase he realized what he did was wrong.

(Doc. 34, at 5).

4

Weintraub determined that there were no grounds for appeal and that no legal error had been committed. Based on his training and experience, he believed there was no basis on which a rational defendant would want to appeal.

Weintraub also testified that, to the best of his recollection, he met with Petitioner immediately after sentencing and that Petitioner never gave him any specific instructions to file a notice of appeal and did not demonstrate in any way that he was interested in appealing the case. Weintraub routinely writes a notation on the client's file folder if a client asks him to file a notice of appeal and that he does so as a matter of routine. The file on Petitioner's case did not contain any notes or correspondence indicating that Petitioner asked him to file a notice of appeal. If a defendant in a CJA case, such as this one, asks Weintraub to file a notice of appeal, Weintraub asks the Court to appoint appellate counsel. It is a simple task that takes five minutes.

Petitioner testified that he spoke with Weintraub while he was in lock-up following the sentencing hearing. According to Petitioner, he was upset about receiving a sentence of 51 months for a straw purchase. During this meeting, Petitioner asserts that he asked Weintraub if he was going to file an appeal and that Weintraub did not respond to the question. Petitioner said that he attempted to contact Weintraub on numerous occasions thereafter but that he was never able to get through and that he did not speak with him again. Petitioner does not have any records of sending emails or letters to Weintraub in which he asked him to file a notice of appeal, nor does he have any record of making phone calls to Weintraub.

Petitioner testified that he spoke with Weintraub about the double jeopardy issue. He also testified that he recalled submitting a statement for acceptance of responsibility which says, "Dear Judge, ...[A]lthough I pled guilty to having a weapon while under a disability for

5

possession of this gun a few years ago, I understand that I also committed a federal crime and I deeply regret it."

**LAW AND ANALYSIS**

In *Flores-Ortega*, the Supreme Court considered when counsel's failure to file a direct appeal constitutes ineffective assistance of counsel. First, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Second, if counsel has not consulted with the defendant, the court must ask whether that "failure...itself constitutes deficient performance." *Id.* "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal..., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In making this determination, a court must consider "all the information that counsel knew or should have known." *Id.* Relevant factors include whether the conviction follows a trial or guilty plea, whether the defendant received the sentence bargained for, and whether a plea expressly reserved or waived some or all appeal rights. *Id.*

To prove the prejudice prong, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485 (noting that the analysis of the prejudice prong is "not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently"). Nevertheless, a defendant need not "specify the points he would raise were his right to appeal

6

reinstated" or demonstrate that his appeal might have merit. *Id.* at 487.

Taking into account the totality of the circumstances, the Court finds that Petitioner has not met his burden of proving that Weintraub provided ineffective assistance of counsel. As an initial matter, the Court finds that Petitioner has not shown that he gave Weintraub specific instructions to file an appeal. Weintraub testified that Petitioner never made any request to file an appeal. His file on Petitioner's case corroborates this testimony as it contains no notation that Petitioner instructed him to file a notice of appeal and no records of any communication from Petitioner asking him to do so. Petitioner's own testimony supports that he never gave Weintraub any specific instruction to file an appeal, and he admitted he has no documentary evidence showing that he did so. Thus, Petitioner cannot meet the first method of showing deficient performance under *Flores-Ortega*.

Petitioner also cannot show that Weintraub was deficient for failing to consult with him about an appeal. As to the first part of this test, there was no reason for Weintraub to think that a rational defendant would have wanted to appeal. Petitioner pled guilty and received the lowest end of the sentencing range. Moreover, there were no nonfrivolous grounds for appeal. Indeed, Weintraub had discussed the double jeopardy issue with Petitioner prior to sentencing, and Petitioner submitted an acceptance of responsibility statement indicating that he understood his federal charge did not violate double jeopardy. Thus, as Weintraub testified, there was no reason for him to think that, under the circumstances, a rational defendant would have wanted to appeal.

Nor does the evidence show that Petitioner demonstrated he was interested in appealing. Weintraub has no recollection or record of Petitioner asking him to file an appeal. He also testified that Petitioner did not demonstrate in any way that he was interested in appealing the

case. According to Weintraub, if Petitioner had asked him to file a notice of appeal, he would have made a note of the request in Petitioner's file as a matter of routine and that it would have been a simple, five-minute task to ask the Court to appoint appellate counsel. The fact that no such notation exists in the file is consistent with Weintraub's recollection that Petitioner never made a request to file an appeal. Nor does Petitioner have any record of sending a letter or email or making a phone call to Weintraub in which he asked Weintraub to file a notice of appeal. Given (1) that Petitioner pled guilty, (2) the lack of any documentary evidence that Petitioner demonstrated a desire to appeal, (3) the lack of nonfrivolous grounds for appeal, (4) that Weintraub had earlier explained to Petitioner that he did not have a viable double jeopardy claim, (5) that Petitioner had demonstrated an understanding of the double jeopardy issue in his acceptance of responsibility statement, and (6) that this Court advised Petitioner of his right to appeal, the Court credits Weintraub's testimony over Petitioner's and finds that Petitioner did not demonstrate an interest in appealing.

Further supporting this Court's conclusion that Weintraub did not perform deficiently is a hypothetical example that the Supreme Court highlighted in *Flores-Ortega*. In rejecting the idea that counsel has a constitutional duty to consult with the defendant about an appeal in every case, the majority addressed a hypothetical with facts nearly identical to this case and strongly implied that the lawyer's performance would ***not*** be deficient:

> For example, suppose that a defendant consults with counsel [about taking a plea or going to trial]; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is professionally unreasonable as a constitutional matter in not consulting

with such a defendant regarding an appeal.

*Id*. at 479 (internal quotations omitted).

For all of the same reasons that Petitioner cannot prove deficient performance, the Court also finds that Petitioner cannot meet the prejudice prong of his ineffective assistance of counsel claim.

Although the best course is normally to confer with a client about his or her wishes regarding an appeal, given the circumstances of this case, this is simply not a situation where counsel was ineffective for failing to do so.

### **CONCLUSION**

For the foregoing reasons, Claim Three of Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED. Claims One and Two having been previously dismissed, the Court hereby dismisses the motion in its entirety. Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

IT IS SO ORDERED.

                                              /s/ Patricia A. Gaughan
                                              PATRICIA A. GAUGHAN
Dated: 10/18/18                      United States District Judge